## Lawrence et al. v. First State Bank of Dry Ridge.

Sept. 29, 1939.

J. G. Vallandingham, Judge.

E. H. Walton for appellants.

L. M. Ackman for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This appeal is from a judgment in behalf of appellee, First State Bank of Dry Ridge, Ky., against G. A. Lawrence and his wife, Annie Lawrence, by which appellee recovered of appellant, G. A. Lawrence, $13,900 on a promissory note executed by him to it and by which it was adjudged that appellee had a mortgage lien on certain land to secure the payment of the note.

It is contended by appellants that the judgment is against the weight of the evidence. The evidence shows that the appellant, G. A. Lawrence, and his two sons, Roy and Ray, had been dealing with the appellee and its predecessors, the First State Bank & Trust Company of Dry Ridge, Ky., and the First National Bank of Dry Ridge, Ky., since prior to the year 1916, the transactions involving the purchase of several farms, and in these transactions notes were executed by different members of the family to the appellee bank or its predecessors. At various times notes were renewed and these renewals would be used to retire outstanding notes previously executed by different members of the family. The appellant, G. A. Lawrence, also carried a general checking account with the various banks.

Some time in the year 1934 the original bank went into the hands of the banking commissioner, and W. T. Blackburn, cashier of the bank, prepared the note sued on for $13,900 and procured appellant, G. A. Lawrence, to sign the note and both appellants to sign the mortgage securing this note. Appellant insists that he did not owe the bank anything at all but that Mr. Blackburn induced him to sign the note and mortgage by representing to him that he really wanted this done in order that the bank might reopen and that he would not record the mortgage but would return it to him on the reopening of the bank.

However, a complete audit was made of all transactions between appellant and the bank from the beginning of the dealings between the parties, and this audit was filed as a part of the evidence. No attack is made on the correctness of any item disclosed by this audit. In fact, it appears from the evidence that appellant, G. A. Lawrence, procured another auditor and had an audit made of all transactions but did not introduce this auditor as a witness. It also appears that for some time after the original bank closed Mr. Lawrence was endeavoring to settle his indebtedness to the bank for $9,000, which was the limit he was able to borrow on his land from the Federal Land Bank, but that the officers of the bank refused to accept this settlement. Under these circumstances and after a careful consideration of the evidence, we are convinced that the chancellor's finding was correct, that Mr. Lawrence was indebted to the bank in the sum of $13,900 as evidenced by his promissory note. Even if the finding of the chancellor were

doubtful on this matter, we would be obligated to accept his decision.

It is also contended by appellants that the trial court was in error in refusing to permit them to file amended answer alleging no consideration for the note but, as we find that appellant was indebted in the amount represented by the note, it is obvious that the court committed no error in this particular.

During the progress of the litigation, the trial court submitted to a jury on an issue out of chancery the question whether or not Mr. Blackburn by fraudulent representations induced appellants to sign the mortgage and the jury found in the affirmative. On this issue out of chancery there was no submission of the question as to whether or not the appellant, G. A. Lawrence, was indebted to the bank in the amount represented by the note sued on. On final submission, however, the trial court rejected the verdict of the jury and adjudged the mortgage to be valid. Appellants contend that this was error on the part of the trial court. However, the action of the court in submitting this issue to a jury out of chancery was purely advisory and not binding on the court. It had a right to reject the verdict of the jury if the facts authorized this action. The evidence heard before the jury on this issue out of chancery has not been made a part of the record. The evidence before us on this issue consists of the testimony of Mr. Blackburn and the appellants and members of their family. Mr. Blackburn denied positively making any representations whatever to induce appellants to sign the mortgage. Opposed to this testimony was that of the appellants and members of their family, interested witnesses, and we are not prepared to say that the chancellor's finding on this issue was against the weight of the evidence. We are inclined to the belief that his finding was correct and even if we had doubts on this matter we would follow the chancellor's finding. The trial court therefore committed no error in rejecting the advisory verdict of the jury on this issue and making his own finding contrary thereto.

It is next contended by appellants that they were defrauded out of money by Mr. Blackburn, acting as agent of the bank, on three transactions involving the purchase of land by Mr. Lawrence. One of these transactions was the purchase of a tract known as the Points

land. Mr. Lawrence says that he paid $2,500 for this land and it appears that a deed was made to Mr. Blackburn for the land and he held it in his name for several years and subsequently made a deed therefor to Lawrence in which the consideration was expressed as $2,701. Lawrence claims that thereby he was defrauded of $201. However, it is apparent to us that the $201 difference was probably an interest charge on the money paid by Mr. Blackburn for Mr. Lawrence in the purchase of the land. Certainly no definite showing is made that Lawrence was defrauded of any money on this transaction.

Again, in the purchase of some land known as the Webster land, Lawrence says that he was defrauded of $570 because the deed recites a consideration of $1,630, but that he actually paid $2,200 as the cash consideration. The mere statement of appellant that there was a discrepancy of $570 between the recited cash consideration of the deed and the amount of cash actually paid by him is far from sufficient to establish that he was defrauded of $570. Mr. Blackburn in his testimony explains this transaction fully and we agree with the chancellor's finding that no fraud was committed on Lawrence in this land transaction.

It is also contended by appellants that there was erroneously included in the $13,900 note sued on the sum of $5,500, representing the purchase of a farm by Lawrence known as the Jump farm. This transaction, however, is explained fully by Mr. Blackburn, testifying from the bank records, which show that on April 6, 1920, Lawrence executed his note for $3,000 and Mrs. Lawrence executed her note for $2,500 to Mr. Lawrence and that he discounted this note at the bank, the proceeds of these two notes being used to pay for the Jump land. Mr. Blackburn explains that the transaction was consummated by Mrs. Lawrence signing the $2,500 note in order to comply with the Federal laws, as Mr. Lawrence was indebted to the bank to the legal limit allowed. We are in full accord with the chancellor's finding that no fraud was practiced on Mr. Lawrence in this deal.

It is finally contended by appellants that the court erred in not setting aside the judgment and order of sale because no notice was given that the judgment was to be entered in vacation on September 4, 1937, and because it was not signed on the order book of the court at the

time of the sale. There is no merit in this contention, however, because the record shows that by agreement of parties the cause was submitted for trial in vacation and it·was agreed that the final decree be entered in vacation as and for a judgment of the court made at a regular term and, although the judgment was not signed at the time of entry on the order book, the rule is that when the order book is signed the judgment dates back to the time of entry. Morrow Mfg. Co. v. Race Creek Coal Co. et al., 222 Ky. 807, 2 S. W. (2d) 662.

Judgment affirmed.