*Decisions will be entered under Rule 50.*

SAMUEL J. RISSMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6365. Promulgated May 21, 1946.

*E. J. Brunenkant, Esq.,* for the petitioner.
*Carroll Walker, Esq.,* and *J. O. Kramer, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: The two issues presented in this proceeding are (1) whether the respondent erred in disallowing an aggregate of $35,669.06 or any part thereof claimed by petitioner as a net long term capital loss from the sale in 1941 of certain shares of stock in three separate corporations, and (2) whether the respondent erred in disallowing $1,100 of the $1,767.73 claimed by petitioner as deductible expenses.

*Issue (1)*. The manner in which petitioner computed the claimed loss aggregating $35,669.06 in schedule F of his return has been set out in our findings. The respondent disallowed the deduction on two grounds, namely, that petitioner had not proved that he owned the 25 shares of stock in each of the three corporations and that he had also failed to substantiate the cost or other basis of the stock.

In his brief the respondent in effect now concedes that petitioner has proved ownership of at least 24 shares in each of the 3 corporations here involved, for in his request for findings of fact he has requested us to find that "In 1941 petitioner was the owner of 24 shares of 714 Buena Building Corporation stock, 24 shares of 737 Cornelia Building Corporation stock and 24 shares of Forty Third Michigan Corporation stock," and that his wife, Esther J. Rissman "was the owner of one share of the stock of each of said corporations." We think the evidence supports these requested findings and we have accordingly so found. We do not think petitioner has proved ownership of the one share in each of the corporations that was issued to his wife. There is some evidence that petitioner owned the share issued to his wife by the Buena Corporation, but the weight of the evidence is otherwise. We, therefore, hold that petitioner has only proved ownership as to 24 shares in each of the corporations here involved.

The respondent still contends that petitioner has failed to substantiate the cost or other basis of the stock. In this connection the applicable statute is section 113 of the Internal Revenue Code, the material provisions of which, as amended, are set forth in the margin.[1]

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(6) TAX-FREE EXCHANGES GENERALLY.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, or section 112 (l), the basis (except as provided in paragraphs (15), (17), or (18) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. If the property so acquired consisted in part of the type of property permitted by section 112 (b) or section 112 (l), to be received without the recognition of gain or loss, and in part of other property, the basis provided in this paragraph shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of exchange. Where as part of the consideration to the taxpayer another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this paragraph, be considered as money received by the taxpayer upon the exchange. This paragraph shall not apply to property acquired by a corporation by the issuance of its stock or securities as the consideration in whole or in part for the transfer of the property to it.

\* \* \* \* \* \* \*

(12) BASIS ESTABLISHED BY REVENUE ACT OF 1932.—If the property was acquired after February 28, 1913, in any taxable year beginning prior to January 1, 1934, and the basis thereof, for the purposes of the Revenue Act of 1932, 47 Stat. 199, was prescribed by section 113 (a), (6), (7), or (9) of such Act, then for the purposes of this chapter the basis shall be the same as the basis therein prescribed in the Revenue Act of 1932.

\* \* \* \* \* \* \*

(16) BASIS ESTABLISHED BY REVENUE ACT OF 1934.—If the property was acquired, after February 28, 1913, in any taxable year beginning prior to January 1, 1936, and the basis thereof, for the purposes of the Revenue Act of 1934 was prescribed by section 113 (a) (6), (7), or (8) of such Act, then for the purposes of this chapter the basis shall be the same as the basis therein prescribed in the Revenue Act of 1934.

\* \* \* \* \* \* \*

The respondent argues first that petitioner's entire case falls because he has failed to prove that the stock of the three corporations was acquired in a transfer of properties to controlled corporations within the terms of section 112 (b) (5). At the time the Buena, Cornelia, and Michigan properties were transferred in 1928 to the three corporations, respectively, section 112 (b) (5) of the Revenue Act of 1928 provided that:

No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

The respondent correctly argues that in order to satisfy the requirements of section 112 (b) (5) "it was incumbent upon this petitioner to establish (1) who owned the properties transferred to the corporation, (2) the exact interests of each of said transferors in the properties, (3) that immediately after the exchange said transferors were in control of the corporations, and (4) that each of said transferors received in the exchange stock substantially in proportion to his interest in the property." We, however, do not agree with the respondent that petitioner has failed to satisfy these conditions. Although the evidence was not as satisfactory as it might have been, we believe that a careful consideration of the entire record supports the ultimate facts we have found, namely, that prior to the transfers to the corporations the respective properties were owned one-fourth

---

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

(A) For expenditures, receipts, losses, or other items, properly chargeable to capital account * * * :

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws. * * *

* * * * * * *

(2) SUBSTITUTED BASIS.—The term "substituted basis" as used in this subsection means a basis determined under any provision of subsection (a) of this section or under any corresponding provision of a prior income tax law, providing that the basis shall be determined—

(A) by reference to the basis in the hands of a transferor, donor, or grantor, or

(B) by reference to other property held at any time by the person for whom the basis is to be determined.

Whenever it appears that the basis of property in the hands of the taxpayer is a substituted basis, then the adjustments provided in paragraph (1) of this subsection shall be made after first making in respect of such substituted basis proper adjustments of a similar nature in respect of the period during which the property was held by the transferor, donor, or grantor, or during which the other property was held by the person for whom the basis is to be determined. A similar rule shall be applied in the case of a series of substituted bases.

by petitioner, one-fourth by John Rissman, and one-half by Cohn, and that immediately after the transfers the entire capital stock of the corporation was owned by the same parties in the same proportions, with the exception of the one share in each of the corporations that was issued to petitioner's wife and which apparently petitioner gave to his wife. On the foundation of these facts, we hold that the transferors of the properties realized no gain or loss on the transfers in 1928, and that the basis to them of the properties transferred is required to be substituted for the stock received by them. This "substituted basis" must then be adjusted as provided for in code section 113 (b) (2), set out in our footnote 1 above.

In the event of our holding contrary to the respondent's contentions as to whether petitioner has satisfied the requirements of section 112 (b) (5), the respondent, as an alternative, has requested us to find as an ultimate fact the following:

23. If any part of such capital loss is allowable, the amount of $35,669.06 claimed in petitioner's return is excessive:

(a) as to each of the stocks of Buena Building Corporation, Cornelia Building Corporation and Forty-Third Michigan Corporation, to the extent that petitioner claimed a loss with respect to the share of stock of each of said corporations owned by petitioner's wife, Esther J. Rissman; and

(b) as to the Buena stock, to the extent that the claimed basis of $220,676.60 for the entire 100 shares included the cancelled inter-company loans in the net amount of $41,468.26, and included the alleged equity of $80,000.00 for the Clark Street property; and

(c) as to the Forty Third Michigan stock, to the extent that the claimed basis of $91,183.92 for the entire 100 shares included the cost of the original land at $37,288 in lieu of the correct cost of $30,567.

In view of our above holding relating to the ownership of the stock in question, it follows that the respondent's request for the ultimate finding set forth in paragraph 23 (a), *supra*, should be and is allowed.

We also think that the respondent's request for the ultimate finding set forth in paragraph 23 (b), *supra*, should be allowed. The claimed basis of $220,676.60 for the entire 100 shares of Buena Corporation was computed by Busby in the preparation of petitioner's return. The computation is set out in our findings. The amount of $362,000 stated in the computation is the total of cash paid in by Cohn, petitioner, and John Rissman of $52,000; the acquisition of the Buena property subject to a first mortgage of $190,000; the giving of a purchase money mortgage of $40,000; and the transfer to the sellers of the Buena property of the Clark Street property at an agreed figure of $115,000, with the sellers of the Buena property assuming two mortgages on the Clark Street property totaling $35,000. The record does not show the cost of the Clark Street property to Cohn, petitioner, and John Rissman. The fair market value of their equity in the Clark

Street property at the time of the 1924 exchange was $80,000. Petitioner has used the $80,000 as a part of the cost of the Buena property on the theory that the 1924 exchange of the two properties was a taxable exchange rather than a tax-free exchange under section 203 (b) (1) of the Revenue Act of 1924.[2]  In so doing, we think petitioner has erred.  It is our opinion that the exchange of the Clark Street property in part consideration for the Buena property in 1924 was a tax-free exchange and that the depreciated cost basis of the Clark Street property should have been substituted as a part of the basis of the Buena property.  Since petitioner has failed to prove the depreciated cost of the Clark Street property as of the date of the exchange in 1924, after a suggestion from the bench that such evidence be submitted, it follows that no figure of cost can be allowed in the computation for the Clark Street property as a part of the substituted basis.

In his brief the respondent goes one step further than his requested finding number 23 (b), *supra*, and argues that the claimed basis of $220,676.60 should not only be reduced by the $80,000 included by petitioner, but also by the $35,000 of mortgages assumed by the sellers of the Buena property in 1924.  In so contending the respondent relies upon code section 113 (a) (6), as amended, set out in footnote 1 above.  On this point we disagree with the respondent.  The first sentence of section 113 (a) (6) requires that we look to the "law applicable to the year in which the exchange was made."  The exchange now in question was made in 1924 and the law applicable thereto, in our opinion, was section 203 (b) (1) of the Revenue Act of 1924, which is set out in footnote 2.  The sentence of section 113 (a) (6), as amended, particularly relied upon by the respondent is the next to the last sentence, reading: "Where as part of the consideration to the taxpayer another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this paragraph, be considered as money received by the taxpayer upon the exchange."  This sentence was inserted in the code by section 213 (d) of the Revenue Act of 1939 and, by section 213 (e) of the same act, was specifically made "applicable to taxable years beginning after December 31, 1938."  We hold it was not applicable to the exchange made in 1924 and that the claimed basis of $220,676.60 should not be reduced by the $35,000 in addition to the said $80,000.

---

[2] No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment, or if common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the same corporation.

As previously indicated, we are of the opinion that the claimed basis of $220,676.60 set out in our findings should be reduced by the canceled intercompany loans in the net amount of $41,468.26. This net amount of $41,468.26, as shown by Busby's computation of the claimed basis of $220,676.60, represents "Inter-company loans cancelled and transferred to capital as per agreement dated April 22, 1935." The material parts of this agreement are set forth in our findings. In support of the inclusion of the net amount of $41,468.26, petitioner relies upon *Helvering* v. *American Dental Co.*, 318 U. S. 322, wherein the Supreme Court, among other things, said:

* * * Where a stockholder gratuitously forgives the corporation's debt to himself, the transaction has long been recognized by the Treasury as a contribution to the capital of the corporation. Regulations 45, Art. 51, through to Regulations 94, Art. 22 (a)–14. *Commissioner* v. *Auto Strop Safety Razor Co., Inc.*, 2 Cir., 74 F. 2d 226.

In the instant proceeding no stockholder of Buena Corporation forgave any debt owed by that corporation to its stockholders. The net amount of $41,468.26 that was forgiven was owed by Buena Corporation to Cornelia Corporation and Michigan Corporation, and it was forgiven by those two corporations. This transaction among the three corporations did not effect any change in petitioner's substituted basis of the 24 shares of stock of the Buena Corporation. Petitioner's contention on this point is denied.

We hold, therefore, that petitioner's substituted basis for the 24 shares of stock of the Buena Corporation is 24 percent of the claimed basis of $220,676.60 after that amount has first been reduced by the above mentioned amounts of $80,000 and $41,468.26, or a corrected substituted basis for petitioner of $23,810. Petitioner, therefore, sustained a loss on the sale of this stock of $22,403.77 ($23,810 cost minus $1,406.23 received in the sale) 50 percent of which, or $11,201.88, is deductible as a net long term capital loss under section 117 of the Internal Revenue Code.

As an alternative proposition, the respondent has not objected to the claimed basis of $86,177.66 for the entire 100 shares of Cornelia Corporation which was computed by Busby in the preparation of petitioner's return. This computation is set out in our findings. The figures there used were all taken from the books of Cornelia Corporation.

The petitioner claims, however, that he has proved a larger cost basis for his Cornelia Corporation stock than he alleged in his pleadings and, therefore, his loss on the sale of that stock should be increased. We shall not discuss the figures upon which petitioner claims an increased cost of this Cornelia Corporation stock. Petitioner did not amend his pleadings so as to raise such an issue. In his petition, petitioner alleged that the cost of his stock in Cornelia Building Cor-

poration was $21,544.42, that he received for it in the sale $4,260.81, and that his loss from the sale was $17,283.61. Even if we should assume that the proof at the hearing shows that the cost to petitioner of his stock in Cornelia Corporation was in excess of the figure which he claimed in his petition, we would be without authority to allow it, because petitioner did not ask or receive permission to amend his petition to conform to the proof. Issues must be raised by the pleadings and not on brief. *North American Coal Corporation*, 28 B. T. A. 807; *General Utilities & Operating Co.* v. *Helvering*, 296 U. S. 200. The petitioner has established by evidence that the cost of the 25 shares in Cornelia Corporation owned by himself and his wife was at least $21,544.42, as alleged in the petition. Of this, petitioner is entitled to use 24/25 in a computation of his loss on the sale of his 24 shares of Cornelia Corporation stock.

As an alternative proposition, the respondent has only objected to the claimed basis of $91,183.92 for the entire 100 shares of Michigan Corporation to the extent of his requested finding 23 (c).

The petitioner claims, however, that he has proved a larger cost basis for his shares of stock in Michigan Corporation than he alleged in his pleadings, even after giving effect to the adjustment which respondent claims should be made under his suggested finding 23 (c), and, therefore, his loss on that particular sale should be increased. We shall not discuss the figures upon which petitioner claims an increased cost basis of his Michigan Corporation stock. Petitioner did not amend his pleadings so as to raise such an issue. In the petition it is alleged that the cost of petitioner's stock in Michigan Corporation was $21,738.17, that he received for the stock in the sale $21,387.81, and that his loss from the sale was $350.18. Even if we should assume that the proof at the hearing shows that the cost to petitioner of his stock in Michigan Corporation was in excess of the figure which he claimed in his petition, we would be without authority to allow it, because petitioner did not ask or receive permission to amend his petition to conform to the proof, for, as we have stated above, issues must be raised by the pleadings and not on brief. See the same authorities as cited above with reference to Cornelia Corporation stock. In our judgment, the petitioner has established by evidence that the cost basis of the 25 shares in Michigan Corporation owned by himself and wife, Esther, was at least $21,738.17, as alleged in his petition. Of this cost basis, petitioner is entitled to use 24/25 in a computation of his loss on the sale of his 24 shares of Michigan Corporation stock.

*Issue (2)*. As to this issue, we hold that petitioner has failed to prove any facts which would indicate that the respondent erred in disallowing $1,100 of the $1,767.73 claimed by petitioner on his return as deductible expenses.

*Decision will be entered under Rule 50.*